UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOHN BURTON,<br><br>　　Plaintiff,<br><br>　　v.<br><br>SPOKANE POLICE DEPARTMENT, DETECTIVE LARRY BOWMAN,<br><br>　　Defendants. | NO. CV-06-322-RHW<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**; **DENYING DEFENDANTS' MOTION TO DISMISS** |

Before the Court are Plaintiff's Motion for Summary Judgment (Ct. Rec. 10) and Defendants' Motion to Dismiss, or in the Alternative, Summary Judgment (Ct. Rec. 27). A hearing on the motions was held on May 23, 2007. Plaintiff was represented by John Sklut and Kate Tylee, a Rule 9 Intern. Defendants were represented by Ellen O'Hara.

## STANDARD OF REVIEW

Here, although Defendants captioned their motion as a Fed. R. Civ. P. 12(b)6 motion to dismiss, they attached the affidavits of Larry Bowman and Doris Stragier in support of their motion. Plaintiff asserts that as a result, pursuant to Fed. R. Civ. P. 12(b), the pending motion to dismiss must be converted into a motion for summary judgment. Defendants did not object in their reply. Thus, the Court will convert their motion to dismiss into a motion for summary judgment.

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION TO DISMISS ~ 1**

that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets it initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 325; *Anderson*, 477 U.S. at 248.

In addition to showing that there are no questions of material fact, the moving party must also show that it is entitled to judgment as a matter of law. *Smith v. Univ. of Washington Law School*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323.

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

## BACKGROUND FACTS

In this case, the parties have both filed motions for summary judgment, which can complicate the lens the Court uses to view the facts. For the most part, however, the material facts in this case are not in dispute.

On March 4, 2005, Defendant Larry Bowman applied for and received a search warrant to search a residence located on West Gardner in Spokane, Washington. The basis for the search warrant was two prior controlled buys that occurred on February 24, 2005, and March 1, 2005, in which Plaintiff delivered crack cocaine to a Confidential Informant (CI).

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION TO DISMISS ~ 2**

1  On March 10, 2005, members of the Spokane Police Department (SPD) executed the warrant. At the residence, a male, M.S., was placed under arrest. He agreed to place a phone call to Plaintiff and order $80 worth of crack cocaine, and did so under the watch of Defendant Bowman and other members of the SPD.

Approximately fifteen minutes later, Plaintiff arrived at the West Garner residence and knocked on the door. Defendant Bowman opened the door, grabbed Plaintiff by the coat, and arrested him. Plaintiff was placed in handcuffs. Plaintiff was searched for the drugs by patting down his body through his clothing. When no drugs were found in this search, Defendant Bowman and Officer Mike McNab conducted a strip search of Plaintiff. According to Defendant Bowman,

> A normal "strip search" begins with searching the clothing, including the pockets, for suspected contraband. If nothing is found, then the hair, mouth, ears, shoes, etc., are examined. Only if nothing is found at that point do we request that the suspect remove their outer clothing for further inspection. In this case, we escorted [Plaintiff] into a recessed area adjacent to the stairway. Officers placed themselves between [Plaintiff] and the living area so his body would be shielded during the search.
>
> [Plaintiff] did not have any drugs in his clothing, mouth, or hair, so we instructed him to remove his shirt and pants, leaving him in his underwear. I may have instructed him to drop his drawers and bend over, so that I could externally examine his buttocks.

(Ct. Rec. 29)

According to Plaintiff, Defendant Bowman ordered him to pull down his underwear and bend over, and then Defendant Bowman examined his buttocks (Ct. Rec. 64). Given Plaintiff's affirmative statement that such a search occurred and Defendant Bowman's statement that such a search 'may' have occurred, the Court concludes that there is no issue of fact that such a search occurred.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION TO DISMISS ~ 3**

**DISCUSSION**

Plaintiff contends that it has long been established that a strip search is the most intrusive of searches and can only be performed after the approval of a judge authorizing a warrant based on a showing of probable cause. In contrast, Defendants assert that such searches can be performed without a warrant whenever officers have reasonable suspicion to believe that a person possesses contraband and the contraband cannot be located by a pat-down search. As discussed further, the Court finds that there is no case law that supports Defendants' position, and that it has long been established that such a search, absent exceptions not applicable here, must be authorized by a judge.

**A.  Section 1983 Claim**

Section 1983 creates a cause of action against any person who, acting under color of state law, violates the constitutional rights of another person. 42 U.S.C. § 1983; *Mabe v. San Bernardino County, Dep't of Public Soc. Serv.*, 237 F.3d 1101, 1106 (9th Cir. 2001). To succeed on a section 1983 claim, Plaintiff must show that (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived him or her of a constitutional right. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). A public official may be immune from liability for acts performed in his official capacity under either the doctrine of absolute immunity or qualified immunity. *Mabe*, 237 F.3d at 1106. Generally, the "presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 433 n.4 (1993).

In determining whether Defendant Bowman is entitled to qualified immunity, the Court must first determine whether Plaintiff has stated a *prima facie* claim that Defendant Bowman violated his constitutional rights. *Saucier v. Katz*, 533 U.S. 194, 198 (2001); *Brittain v. Hansen*, 451 F.3d 982, 988 (9th Cir. 2006). "If no constitutional right would have been violated were the allegations

established, there is no necessity for further inquiries concerning qualified immunity." *Id.*

If the Court determines that Plaintiff presented a *prima facie* case, it must ascertain "whether that right was 'clearly established' such that 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Brittain*, 451 F.3d at 988 (*quoting Menotti v. City of Seattle*, 409 F.3d 1113, 1152 (9th Cir. 2005). "This inquiry is wholly objective and is undertaken in light of the specific factual circumstances of the case." *Id.* (*quoting San Jose Charter of the Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 971 (9th Cir. 2005).

In determining immunity, the Court must accept the Plaintiff's allegations as true. *Buckley v. Fitzsimmons*, 509 U.S. 259, 261 (1993). The official seeking immunity bears the burden of demonstrating that immunity attaches to a particular function. *Burns v. Reed*, 500 U.S. 478, 486 (1991).

**(1)     Whether Constitutional rights were violated**

Defendant Larry Bowman argues that he did not violate Plaintiff's constitutional rights because he had reasonable suspicion that drugs would be found on Plaintiff's body (Ct. Rec. 28) ("In this case, Det. Bowman in entitled to qualified immunity because he could reasonably have believed his search of Burton was founded on reasonable suspicion, even though drugs were not found."). Defendant's focus on reasonable suspicion skews the analysis because the Court cannot imagine a situation in which reasonable suspicion would justify a strip search in the field.[1] Also, in this case, Plaintiff is not disputing that the officers had

---

[1] In *Terry v. Ohio*, the Supreme Court held that a law enforcement officer, for his own protection and safety, may conduct a patdown to find weapons that he reasonably believes or suspects are then in the possession of the person he has accosted. 392 U.S. 1, 21-22 (1968). Generally, "[a] *Terry* stop involves no more

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION TO DISMISS ~ 5**

probable cause to arrest him. Thus, the proper analysis is to determine whether the strip search of Plaintiff was justified as a search incident to arrest.

The Ninth Circuit has addressed this question in relationship to visual body cavity inspections.[2] *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1446 (9th Cir. 1991).

---

than a brief stop, interrogation, and under proper circumstances, a brief check for weapons." *United States v. Robertson*, 833 F.2d 777, 780 (9th Cir. 1987). A strip search clearly goes beyond a patdown and brief check for weapons, and is not a proper *Terry* search. Moreover, in this case, it is clear from Defendant Bowman's declaration that he was not searching for weapons when he conducted a strip search of Plaintiff; rather he was searching for drugs. *See United States v. Miles*, 247 F.3d 1009, 1015 (9th Cir. 2001) (suppressing evidence where the officer did not testify that the motivation for the search was to look for a weapon).

It is true that body cavity searches of prisoners and detainees are permitted on less than probable cause in order to protect prisons and jails from smuggled weapons, drugs, or other contraband which pose a threat to the safety and security of penal institutions. *Bell v. Wolfish*, 441 U.S. 520, 559 (1979) (noting that a detention facility "is a unique place fraught with serious security dangers" and that prisoner strip searches were justified by "balancing the significant security interests of the institution against the privacy interests of the inmates."). Defendants have not attempted to justify the strip search of Plaintiff in the field based on penological safety concerns.

[2]The Court sees no difference between strip searches in which a suspect is asked to bend down and expose their buttocks and a visual cavity search in which the officer examines the anus or vagina of a suspect. Both types of searches are a significant intrusion on the privacy rights of the person being searches. *See Kirkpatrick v. City of Los Angeles*, 803 F.2d 485, 489-90 (9th Cir. 1986) ("[T]he fact that a strip search is conducted reasonably, without touching and outside the

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION TO DISMISS ~ 6**

In *Fuller*, the Circuit held that visual body cavity searches cannot be justified as a search incident to arrest. *Id.* In that case, the suspects were subjected to strip and visual body cavity searches that took place at the Los Angeles Police Department. *Id.* at 1440. They were subjected to a second strip search when they were booked into a women's jail. *Id.*

Defendants attempt to distinguish the facts in *Fuller*. Defendants point out that in this case, the officers had a search warrant to search the residence; the officers had probable cause to arrest Plaintiff; Defendant Bowman had particular expertise in the habits and customs of drug dealer; Defendant Bowman had personal knowledge that Defendant agreed to sell an individual some crack cocaine; the amount of time Plaintiff was made to drop his underwear was a few seconds; Plaintiff was not instructed to spread his buttocks apart, nor did he have to cough; and Plaintiff did not appear upset or embarrassed. None of these factors, however, were dispositive in deciding *Fuller*. *Fuller* was not decided on the facts; rather, the Circuit determined that the policy of conducting blanket strip searches at the jail was unconstitutional as a matter of law.

In holding that a visual body cavity search cannot be justified as a search incident to arrest, the *Fuller* court relied on its holding in *Giles v. Ackerman*, 746 F.2d 614, 616 (9th Cir. 1984) that strip searches are beyond the scope authorized as

---

view of all persons other than the party performing the search, does not negate the fact that a strip search is a significant intrusion on the person searched . . ." (citation omitted)); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1446 (9th Cir.1989) ("The feelings of humiliation and degradation associated with forcibly exposing one's nude body to strangers for visual inspection is beyond dispute.").

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION TO DISMISS ~ 7**

a search incident to arrest.³  In *Giles*, the plaintiff was arrested based on an outstanding warrant that had been issued because of several outstanding parking tickets. *Id.* at 615. The jail had a policy to strip search all arrestees who were to be placed in the general jail population.⁴ *Id.* at 616. The circuit noted that *Robinson*, which held that a "full search of the person" incident to arrest was *per se* reasonable under the Fourth Amendment, was limited to a patdown and examination of the arrestee's pockets, and it declined to extend the *Robinson* search incident to arrest exception to strip searches in the jail setting. *Id.* at 616. In doing so, the circuit observed that *Robinson* did not involve a strip search or bodily intrusion, and "nothing in the opinion implies that the court intended 'full search' to include such intrusions." *Id.* It cited with approval *May Beth G. v. City of Chicago*, 723 F.2d 1263 (7th Cir. 1983), which also noted that *Robinson* "simply did not contemplate the significantly greater intrusions" involved in strip and visual body cavity searches." *Id.* The *Fuller* court reaffirmed its holding in *Giles*. *Fuller*, 950 F.2d at 1446.

Accordingly, because the strip search was not a *Terry* stop, nor was it justified as a search incident to arrest, the officers were required to obtain a warrant before conducting a strip search, absent exigent circumstances. *Id.* at 1449.

Here, Defendants have not argued that exigent circumstances existed that would justify the warrantless strip search.⁵ In *Fuller*, the circuit held that no

---

³*Giles*, in turn, relied on the Supreme Court case of *United States v. Robinson*, 414 U.S. 218 (1973). *Giles* was overruled based on other grounds in *Hodgers-Durgin v. de la Vine*, 199 F.3d 1037 (9th Cir. 1999).

⁴Although the policy required a visual examination of body cavities, the plaintiff in that case was subjected only to a skin search. *Id.*

⁵At oral argument, Defendants attempted to distinguish *Fuller* by arguing that *Fuller* only applies to stolen property and would not apply to hidden drugs.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION TO DISMISS ~ 8**

exigent circumstances were present in that case because there was no risk that the alleged stolen property, a ring, would have been discarded or destroyed if hidden in a body cavity. *Id.* at 1450. It noted that in a custodial setting, the police could have easily guarded against the possibility that the defendant would have removed the ring from her body cavity by observing her while the warrant was obtained. *Id.* The circuit also concluded that the ring was not likely to pose any health risk to an individual secreting it within her body. *Id.*

As in *Fuller*, no exigent circumstances were present to excuse Defendant Bowman's failure to obtain a warrant to conduct the strip search. Plaintiff was handcuffed and he could have easily been observed while the officers obtained a warrant to conduct a strip search. As such, the warrantless strip search conducted in the field was unconstitutional.

(**2**)  **Qualified Immunity**

Defendant Bowman would enjoy qualified immunity from liability in connection with the strip search of Plaintiff if a reasonable police officer could have believed that searches were lawful, in light of clearly established law and the information he possessed at the time. *Fuller*, 950 F.2d at 1450.

As noted above, *Robinson*, *Giles,* and *Fuller* clearly established that strip searches in the field, absent a warrant or exigent circumstances, are unconstitutional. *Robinson* was decided in 1973; *Giles* was decided in 1984; and *Fuller* was decided in 1991. The Court finds that the law regarding strip searches was clearly established and Defendant Bowman is not entitled to qualified immunity.

**B.    Claim against the City of Spokane**

A municipality may be held liable under § 1983 only for constitutional violations occurring pursuant to an official government policy or custom. *Monell*

---

The Court finds this distinction without merit.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION TO DISMISS ~ 9**

1 *v. Dep't of Soc. Services*, 436 U.S. 658, 691 (1978).

2    Defendant City of Spokane argues that Plaintiff has not shown that the deprivation of his constitutional rights was the product of an official custom or policy. Defendant Bowman's testimony belies this assertion. In his declaration, he described his training on searches starting as a patrol officer in 1991 through his promotion to detective in 1998. He established that his primary function since 1998 has been to investigate cases involving distribution of controlled substances and that in that capacity has participated in thousands of arrests of suspected drug traffickers. As noted earlier, he described the 'normal strip search' performed by his officers and also stated that they are trained to get a warrant if there is a search of a body cavity. The City of Spokane has not proffered any evidence to contradict Defendant Bowman's description of City policy. The Court concludes from Defendant Bowman's testimony that the policy followed by City police officers is to get a warrant if a cavity is to be opened, but to not get a warrant if the orifice is only to be observed and not opened.

At oral argument, the City argued that there is no City policy regarding strip searches; rather, whether to conduct a strip search is left up to the officer's discretion. The Court does not accept the argument that the City does not have a policy. It clearly has a policy. The policy is to leave to the officers in the field the discretion to conduct a strip search in the field without a warrant.

The Court finds that the City of Spokane has a policy that allows police officers to perform strip searches in the field without a warrant, and to only seek a warrant if a body cavity is to be opened. The Court finds that Defendant Bowman was acting pursuant to the City of Spokane Police Department policy or custom of conducting strip searches in the field without a warrant.

**C.   State Law Claims**

Plaintiff did not move for summary judgment on his state law claims. Defendants argue that Plaintiff's claim for violation of the Eighth Amendment

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION TO DISMISS ~ 10**

should be dismissed because the Eighth Amendment protects those who have been convicted of crimes. The Court agrees. *See Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989). Thus, to the extent Plaintiff is relying on the Eighth Amendment in asserting his claim for cruel and unusual punishment, summary judgment in favor of Defendants is appropriate.

Defendant Bowman argues that he is entitled to state qualified immunity since he was carrying out a statutory duty according to procedure, and he was acting reasonably.[6] For the reasons stated above, the Court disagrees. As such, summary judgment in favor of Defendant Bowman on the state law claims is not appropriate.

**D.    Conclusion**

Common sense and case law tell us that forcing a person to stand naked and bend over in front of strangers is humiliating and most invasive of human dignity. Where there is no emergency or institutional threat, such as a jail setting, it is clear that our Constitution requires a neutral judge to decide if there is justification for such an indignity. The Court is not aware of any precedent that suggests that police officers can conduct such searches for evidence in the field without a warrant. A strip search is certainly as intrusive as the search of a house. An observation made by the Supreme Court over 50 years ago in the context of a warrantless search of a house is informative.

> The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.

---

[6]Under Washington law, an officer has qualified immunity from suit under Washington law where the officer: (1) carries out a statutory duty; (2) according to procedures dictated to him by statute and superiors, and (3) acts reasonably. *Staats v. Brown*, 139 Wash. 2d 757, 778 (2000) (citations omitted).

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION TO DISMISS ~ 11**

> Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. Crime, even in the privacy of one's own quarters, is, of course, of grave concern to society, and the law allows such crime to be reached on proper showing. The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent.

*Johnson v. United States*, 333 U.S. 10, 13-14 (1948).

Summary judgment in favor of Plaintiff and against Defendants as to liability on the Fourth Amendment issue is, therefore, appropriate. Summary judgment in favor of Defendants on the Eighth Amendment claim is granted. Summary judgment in favor of Defendant Bowman on the state law claims is denied.

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (Ct. Rec. 10) is **GRANTED**.

2. Defendants' Motion to Dismiss, or in the Alternative, Summary Judgment (Ct. Rec. 27) is **GRANTED,** in part**,** and **DENIED**, in part.

3. A telephonic status conference is set for **July 11, 2007**, at **11:00 a.m.** The parties are directed to call the Court conference line ((509) 458-6380) at the appropriate time. The parties are directed to meet and confer in advance of the scheduling conference and discuss the following:

    a.    the discovery plan, as well as the parties' recommended trial date and length of trial;

    b.    appropriateness of special procedures;

    c.    modification of the standard pretrial procedures due to the relative simplicity or complexity of the action or proceeding;

    d.    feasibility of bifurcation, or otherwise structuring sequence of the trial;

      e.      the prospects of settlement, addressing whether there will be a point in the litigation, short of discovery cut-off, when the parties can conduct meaningful settlement discussions or participate in another form of alternative dispute resolution;

      f.      any other matters which may be conducive to the just, efficient and economical determination of the action or proceeding, including the definition or limitation of issues.

The following deadline dates will be outlined in an Order after the scheduling conference. Be prepared to discuss these deadlines if there are any changes.

| | |
|---|---|
| Discovery cutoff: | 90 days before trial |
| Plaintiff's expert witnesses: | 60 days before discovery cutoff |
| Defendants' expert witnesses: | 28 days after Plaintiff's disclosure |
| Rebuttal expert witnesses: | 14 days after Defendants' disclosure |
| Dispositive motions: | 80 days before trial |
| Exhibit/witness lists: | 45 days before trial |
| Motions in limine: | 40 days before trial |
| Pretrial Order: | 14 days before pretrial conference |
| Pretrial Conference: | 17 days before trial |
| Trial briefs | 14 days before trial |
| Jury instructions, voir dire | 14 days before trial |

4. Counsel shall file with the Court, not less than 10 days in advance of the conference, a joint certificate (or separate certificates) reflecting the results of their conference and the parties' position with respect to each subject of this Order. Counsel shall also file the proposed discovery plan as discussed in Fed. R. Civ. P. 26(f) within ten (10) days after the parties meet to discuss the Plan. Counsel are expected to comply with the spirit of Rule 26 and seek to minimize the time and expense of discovery.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION TO DISMISS** ~ 13

1 **IT IS SO ORDERED.** The District Court Executive is directed to enter
2 this Order and forward copies to counsel.
3     **DATED** this 11th day of June, 2007.

                  *S/ Robert H. Whaley*

                  ROBERT H. WHALEY
              Chief United States District Judge

Q:\CIVIL\2006\Burton\sj.ord_mtd.wpd